INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 150, AFL-CIO, Plaintiff,

v.

KENNY CONSTRUCTION COMPANY, an Illinois corporation, et al., Defendants.

No. 83 C 4573.

United States District Court, N.D. Illinois, E.D.

March 29, 1984.

**1468**

Roger N. Gold, Anita Tanay, Chicago, Ill., for plaintiff.

Arthur B. Smith, Jr., Michael W. Duffee, Vedder, Price, Kaufman & Kammholz, Chicago, Ill., for defendants.

## MEMORANDUM ORDER

BUA, District Judge.

Plaintiff, International Union of Operating Engineers, Local 150, AFL–CIO ("Local 150"), brings this action against a joint venture composed of three construction companies: Kenny Construction Company, Illinois Construction Corp. and Thomas M. Madden Co., doing business as K.I.M., a joint venture (collectively referred to as "K.I.M."). Local 150 seeks to set aside an arbitration award pursuant to the Labor Management Relations Act of 1947, Title III, Section 301(a), 29 U.S.C. § 185(a) as amended. Jurisdiction in this Court is based on Title III, Section (c)(2) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(c)(2).

Presently before this Court are Local 150's and K.I.M.'s cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons stated below, K.I.M.'s motion for summary judgment is granted and Local 150's motion is denied.

## I. FACTS

Both parties concede there are no genuine issues of material fact. Beginning in the late 1970s, K.I.M. was awarded a contract by the U.S. Army Corps of Engineers to renovate the Dresden Lock and Dam on the Illinois River in Morris, Illinois. The renovation involved removing and replacing concrete surfaces as well as painting and sandblasting various dam structures. In order to remove and replace the concrete, K.I.M. employed tradesmen from the following unions: defendant Local 150; Local Union 75, Laborers; Local Union 1092, Carpenters and Millwrights; and Local Union 444, Ironworkers. As a component of K.I.M.'s employment contract with the unions, all parties agreed to be bound by the terms of a master collective bargaining agreement known as the Heavy, Highway and Underground Agreement ("Master Agreement"). However, since K.I.M. does not sandblast or paint, it subcontracted that work to Joanna Painting Company ("Joanna"). Joanna employed Local 33, Painters ("Local 33") to perform the sandblasting and painting. Although Joanna has a collective bargaining agreement with Local 33, Joanna does not have such an agreement with the unions signatory to the Master Agreement. Locals 150 and 33, however, through their respective international unions, are parties to the "Plan for the Settlement of Jurisdictional Disputes in the Construction Industry." [1]

On May 19, 1982, Joanna's Local 33 employees began working at the Dresden job site. These employees utilized an air compressor to perform sandblasting pursuant to Joanna's subcontract. On that day, a Local 150 employee complained to K.I.M.'s project manager that a Local 33 employee

---

1. The "Plan for the Settlement of Jurisdictional Disputes in the Construction Industry" is an agreement between the unions affiliated with the AFL–CIO Building and Construction Trades Department and various employer associations to resolve jurisdictional disputes in the construction industry. As applied to the facts, this agreement provided a forum, the Impartial Jurisdictional Dispute Board, to resolve jurisdictional disputes between union locals.

had been operating an air compressor. Local 150's Business Manager thereafter wrote to K.I.M. and charged that K.I.M. had violated the Master Agreement by subcontracting work claimed in the Master Agreement to a nonsignatory contractor, Joanna, who employed non-Local 150 members. K.I.M. then requested Joanna to reassign the compressor work to Local 150 members. On July 2, 1982, Local 33 responded to Joanna and K.I.M. by declaring that Local 33 would strike at the Dresden project site "if any part of [their] jurisdiction [was] taken away...." Defendants' Memorandum, filed October 11, 1983, at 5.

Because of Local 150's continuing demands for assignment of Joanna's compressor work, and Local 33's refusal to relinquish that work and threatened strike, K.I.M. filed an unfair labor practice charge against Local 33 with the National Labor Relations Board ("NLRB") on July 6, 1982. Specifically, K.I.M. charged that Local 33 violated sections 8(b)(4)(i) and (ii)(D) of the National Labor Relations Act, 29 U.S.C. § 158(b)(4)(i) and (ii)(D), by coercing K.I.M. to resolve the unions' conflicting jurisdictional claims in Local 33's favor. A NLRB hearing date was set. Local 150 was named a party in interest in the NLRB's Notice of Hearing.

### A. *Proceedings Before the National Labor Relations Board*

Prior to the hearing date, Local 150 advised the NLRB that it was making no jurisdictional claim to the work of operating the air compressor in question. Instead, Local 150 asserted that its sole claim was that K.I.M. had violated the subcontracting clause of the Master Agreement when it subcontracted the sandblasting to Joanna who was not signatory to the Master Agreement. Local 150 stated that it intended to pursue its claim as a subcontracting grievance and to seek contract damages.

Relying upon Local 150's work disclaimer, the acting NLRB Regional Director issued an order, over K.I.M.'s objections,

that Local 150 "disclaimed" the compressor work as the NLRB defines that term. The Regional Director withdrew the Notice of Hearing and dismissed K.I.M.'s charge, thereby precluding the NLRB from rendering a decision on the merits of the dispute. K.I.M. objected to the Regional Director's action and appealed the dismissal to the NLRB's General Counsel, who later denied K.I.M.'s appeal and motion for reconsideration. In response to the jurisdictional issue, the General Counsel summarily noted that Local 150 was merely attempting to enforce a subcontracting claim against K.I.M. and that Local 150 had disclaimed any interest in the disputed work and had not reasserted its claim to that work.

### B. *Grievance and Arbitration*

After the NLRB dismissed K.I.M.'s charge, Local 150 filed a grievance before the Joint Grievance Committee.[2] Specifically, Local 150 alleged that K.I.M. violated Article I, Section 4 of the Master Agreement by subcontracting work to Joanna because Joanna was not signatory to the Master Agreement. The Joint Grievance Committee, however, was unable to resolve the matter by a majority vote. The dispute was then submitted to a neutral arbitrator for resolution. Stephen B. Goldberg was mutually selected by the parties to act as arbitrator.

On March 9, 1983, a hearing was held before Arbitrator Goldberg. The central issue determined by Goldberg was whether Local 150's grievance was arbitrable pursuant to the Master Agreement. Two provisions of the Master Agreement were considered by the arbitrator: (1) Article XIII, Section 1, of the Master Agreement which provides for arbitration to settle any claim or dispute involving an interpretation or application of the Master Agreement, and (2) Article XIII, Section 2, of the Master Agreement which provides for resolution of jurisdictional disputes between union locals before a jurisdictional dispute board. At the arbitration hearing, K.I.M. asserted

---

**2.** Local 150 and K.I.M. created a Joint Grievance Committee to resolve grievances arising out of the Master Agreement. This committee consisted of equal number of members representing employer K.I.M. and the employees' Local 150.

that the grievance was not arbitrable because it was a jurisdictional dispute under section 2 and not a dispute under section 1. Local 150, however, argued that no jurisdictional dispute existed and that the NLRB had conclusively so decided by dismissing the Section 8(b)(4)(D) charges. After considering the parties' arguments, Arbitrator Goldberg held that Local 150's grievance amounted to a jurisdictional dispute which was not arbitrable under the Master Agreement.

## II. DISCUSSION

■ Both K.I.M. and Local 150 have moved for summary judgment pursuant to Rule 56, Fed.R.Civ.P. The very narrow issue before this Court is whether the arbitrator's award should be vacated. The principles specifying the appropriate standard of judicial review of arbitration awards arising from collective bargaining agreements are well established. Courts generally refuse to review the merits of an arbitration award under collective bargaining agreements. *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960). The federal policy of settling labor disputes by arbitration would in fact be undermined if courts had the final say on the merits of such awards. *Id.* Arbitrators interpreting collective agreements are indispensable agencies in a continuous collective bargaining process. *Id.* Nevertheless, an arbitrator is confined to interpret and apply the collective bargaining agreement. An arbitration award therefore is legitimate only so long as it draws its essence from the collective bargaining agreement. If an arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award. *Id.* at 597, 80 S.Ct. at 1361.

■ Local 150's first argument is that Arbitrator Goldberg's decision should be vacated since it did not draw its essence

from the Master Agreement. This Court disagrees. The arbitrator's reliance on two provisions of that collective bargaining agreement demonstrates that his decision drew its essence from the substantive provisions within the Master Agreement. First, the arbitrator noted that the Master Agreement delineates between disputes involving "interpretation or application of the Agreement," which are arbitrable under Article XIII, Section 1, and "jurisdictional disputes" which are covered by Section 2. Second, the arbitrator expressly relied on Section 2, Art. XIII, of the Master Agreement which provides, in part, that "[w]henever a jurisdictional dispute shall arise between local labor organizations, the provisions of this Agreement shall prevail until a Jurisdictional Award has been made by the proper Jurisdictional Board of International Unions." In this case, the proper jurisdictional board is the Impartial Jurisdictional Dispute Board. Arbitrator Goldberg read Section 2 as providing the appropriate forum in which Local 150 should air its grievance.[3]

■ Local 150's second argument is that the arbitration decision must be set aside since the NLRB had already concluded that no jurisdictional dispute existed when the NLRB dismissed K.I.M.'s Section 8(b)(4)(D) Labor Act charges. This Court disagrees and adopts Arbitrator Goldberg's rationale behind rejecting this same argument. Goldberg maintained that the function of an arbitrator is to enforce the contractual rights and not to enforce the National Labor Relations Act. Moreover, Goldberg ruled that the NLRB's conclusion was not persuasive since the purposes of the Labor Act and the relevant provisions of the labor contract differed. Citing *Plasterers Local 79 v. NLRB*, 404 U.S. 116, 118, 128–130, 92 S.Ct. 360, 362, 368–369, 30 L.Ed.2d 312 (1971), the arbitrator concluded that Section 8(b)(4)(D) of the Labor Act was enacted to protect employers from being caught

---

**3.** This Court further holds that the arbitrator properly rejected Local 150's argument that no jurisdictional dispute existed because it sought only contractual compensation and did not seek the work of operating the air compressor at the

Dresden site. If Local 150 had no legitimate claim to the work, neither would it be entitled to compensation. Thus, as a practical matter, Local 150 claimed the work and not merely damages.

in a coercive crossfire of strikes arising out of contested work assignments. In contrast, Goldberg concluded that the purpose of Article XIII, Section 2 of the Master Agreement was considerably broader in that it also protects K.I.M. from being subject to any conflicting union pressures arising out of work assignments, including less coercive pressures of potentially conflicting arbitration awards. Thus, Arbitrator Goldberg declared that Article XIII, Section 2, not only bars Local 150 from engaging in work stoppages to enforce its claims in a jurisdictional dispute, but also bars it from seeking to enforce its claims through arbitration. This Court agrees.

## CONCLUSION

The arbitrator's decision draws its essence from the collective bargaining agreement. That decision, therefore, is not reviewable by this Court. Accordingly, defendant K.I.M.'s motion for summary judgment is granted and plaintiff Local 150's motion is denied.

IT IS SO ORDERED.